**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ALERTPOINT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. _____ |
| | ) | |
| DEAN OLDS and ROOMPRO | ) | |
| TECHNOLOGIES, INC., | ) | Jury Trial Requested |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT

COMES NOW AlertPoint, LLC ("AlertPoint"), Plaintiff in the above-styled action, and hereby files this Complaint against Defendants Dean Olds and RoomPro Technologies, Inc. ("RoomPro"), showing the Court as follows:

## PARTIES AND JURISDICTION

1.

AlertPoint is a Georgia limited liability company with its principal place of business located at 1201 Roberts Boulevard, Suite 100, Kennesaw, Georgia 30144.

2.

Dean Olds is a Georgia citizen who resides and can be served at 218 Cedar Woods Way, Canton, Georgia 30114.

3.

RoomPro is a Wisconsin corporation.  According to the Wisconsin Secretary of State's website, Dean Olds is the registered agent for RoomPro.  Upon information and belief, Mr. Olds is also the President and majority shareholder (if not sole shareholder) of RoomPro.

4.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338 because Plaintiff's claims arise from an Act of Congress relating to copyrights.  Specifically, the resolution of Plaintiff's claims requires application of the work-for-hire doctrine of the Copyright Act, 17 U.S.C. § 101 *et seq*.

5.

This Court has personal jurisdiction over Dean Olds because he is a citizen of the State of Georgia.  This Court has personal jurisdiction over RoomPro because RoomPro's principal place of business is located in the State of Georgia.  Alternatively, this Court has personal jurisdiction over RoomPro because the company is subject to Georgia's long-arm statute, O.C.G.A. § 9-10-91, and because the exercise of personal jurisdiction over RoomPro comports with the due process requirements of the Fourteenth Amendment of the United States Constitution.  Specifically, this Court has jurisdiction over RoomPro pursuant to Georgia's long-

arm statute because RoomPro transacts business within the state and/or committed a tortious act or omission within the state.

6.

Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2) because this is the judicial district in which Dean Olds resides and in which a substantial part of the events or omissions giving rise to AlertPoint's claims occurred.

## FACTUAL BACKGROUND

7.

AlertPoint is a privately held company that specializes in manufacturing, delivering, and implementing its proprietary crisis management technology (software and hardware, the "AlertPoint System"), which is designed specifically to help, *inter alia*, educational institutions and facilitates accelerate emergency awareness, response, and critical communication.

8.

The AlertPoint System includes a powerful blend of hardware, software, and wireless technologies that permits school teachers and administrators to quickly, accurately, and reliably notify school administrators and emergency responders of exigent circumstances, such as an active shooter on the premises or an emergency

medical situation.  One of the primary functions of the AlertPoint System is to provide schools with a solution for placing the school in a "lockdown mode" as expeditiously as possible, including notifying and securing the staff, teachers, and students when there is a threat.

9.

David Allen is the sole member of AlertPoint.

10.

David Allen has been working in the education industry for more than 40 years.  After graduating college he spent 5 years with Osceola County Schools in Kissimmee, Florida, where he was a Senior System Analyst Programmer writing code and operating the mainframe.  He subsequently moved to Marietta, Georgia, where he worked for 11 years for the Cobb County Schools, spending 6 years as the Senior Database Programmer and 5 years as the Executive Director of Network Services.  During that time period, Mr. Allen managed all of the computer networks within Cobb's 120 schools.  He then transitioned to Forsyth County Schools, where he worked as the Chief Information Officer for 3 years.

11.

In 1999, Mr. Allen left his job as the Chief Information Officer for Forsyth County Schools and went to work for the Georgia Department of Education as an

independent contractor specializing in educating school districts on how to link their school networks to the Department of Education.

12.

Mr. Allen also worked as an independent contractor for Suntrust Bank supervising over 300 people with respect to refreshing the bank's computer systems in connection with the Y2K (year 2000) project.

13.

In 2000, Mr. Allen began working for Dell as a Senior Technical Sales Representative for K-12 schools throughout the Southeast region of the United States.

14.

In 2005, Mr. Allen left Dell and organized EDCO-Educational Consultants, Inc. ("EDCO").

15.

Also between 2005 and 2010, Mr. Allen worked as a technology consultant for K-12 schools specializing in audio/visual teaching aides.

16.

Towards the end of 2010, Mr. Allen elected to dedicate all of his efforts to EDCO, where he remains the President, CEO, and sole shareholder.

17.

EDCO primarily sells educational audio/video technology solutions to schools in the K-12 marketplace.

18.

RoomPro also sells audio/video technology for use in schools, conference rooms, and training rooms.  Specifically, RoomPro specializes in the sale of the "RoomPro System," which is a projector mount that comes equipped with four speakers.  The RoomPro System, *inter alia*, monitors the activity of the projector bulb and estimates remaining bulb life.

19.

In 2011, EDCO began selling RoomPro Systems that it purchased from RoomPro to schools in the K-12 marketplace.  As a result, Mr. Allen and Mr. Olds talked on a semi-regular basis about their respective businesses and the industry as a whole.

20.

During 2012, Mr. Allen and Mr. Olds discussed the possibility of entering into a joint venture focused on providing educational tools to the K-12 marketplace that utilized 3-D technology.  Those efforts never came to fruition.

21.

During this time frame, Mr. Allen also had the idea to create an emergency alert notification system that could be utilized in schools.  Mr. Allen shared his idea with Mr. Olds and the two men subsequently began discussing options to bring Mr. Allen's idea to the marketplace.

22.

Beginning in 2012, Mr. Allen and Mr. Olds began discussing different ways to structure and design an emergency alert notification system for schools.  They discussed utilizing different features, nesting options, and functionality.

23.

In the fall of 2015, Dean Olds relocated from Wisconsin to Georgia for the purpose of working on the AlertPoint System with David Allen.  Prior to relocating, Mr. Olds and Mr. Allen had begun discussing different ways to structure a new company dedicated to marketing and selling the AlertPoint System, including issues such as the division of equity and capital contributions.

24.

After relocating to Georgia, Dean Olds was provided office space in EDCO's office for the purpose of working on the AlertPoint System with David Allen and other EDCO employees.

25.

After relocating to Georgia, Dean Olds represented to David Allen that Mr. Olds and Mike Matera were working exclusively on the development of the AlertPoint System.

26.

After relocating to Georgia, Dean Olds worked regularly at EDCO's offices.

27.

David Allen had the ability to and did assign tasks related to the development of the AlertPoint System to Mr. Olds and Mr. Matera.  Specifically, Mr. Olds was tasked with managing and supervising EDCO and AlertPoint employees, as well as supervising the independent contractors regarding the development of Alertpoint software and hardware.  Mr. Olds reported to David Allen concerning any significant changes or issues regarding the drafting of software and/or hardware for the AlertPoint System.

28.

For the time period originating in January 2016, EDCO began covering all of RoomPro's and Dean Old's expenses incurred in connection with the development of the emergency alert notification system, including, but not limited to, paying the salaries of the following RoomPro staff: Dean Olds and Mike Matera.

29.

Beginning in July 2016, EDCO also began reimbursing RoomPro for taxes, social security, and other financial obligations incurred in connection with salary payments for work on the AlertPoint System made by RoomPro to its W-2 employees: Dean Olds and Mike Matera.

30.

During 2016, Dean Olds continued to be responsible for managing and supervising EDCO and AlertPoint employees, as well as supervising the independent contractors regarding the development of AlertPoint software and hardware.

31.

In an effort to facilitate the development of the AlertPoint System, EDCO also hired Ramakrishnan Manivannan on December 1, 2016.  Mr. Manivannan worked exclusively on the AlertPoint System, including, but not limited to writing specifications for AlertPoint software, inspecting the school sites, and preparing the schematics for the AlertPoint System installation.  Mr. Manivannan was paid by EDCO as a W-2 employee and all of the work he performed was on a work-for-hire basis.  Mr. Manivannan has never worked for RoomPro.

32.

AlertPoint was officially organized on December 1, 2016.  David Allen was identified as the sole member.

33.

David Allen and Dean Olds were designated as AlertPoint's President and CEO, respectively.

34.

After AlertPoint was organized, it assumed the legal obligation to repay EDCO for all expenditures EDCO had incurred in connection with the development of the AlertPoint System in exchange for an assignment of EDCO's rights to any and all assets, patents, and copyrights associated with the AlertPoint System.

35.

On December 1, 2016, Dean Olds executed and sent a letter from AlertPoint to one of the local school systems regarding the AlertPoint System, in which Mr. Olds represented that "AlertPoint is the sole manufacturer and exclusive provider of the AlertPoint crisis management software and associated hardware" and that AlertPoint "holds all patents, trademarks and copyrights."

36.

As of December 2016, the software for the AlertPoint System had still not been completed.

37.

In January 2017, Dean Olds and Mike Matera officially became AlertPoint employees.

38.

To further assist with the development of the AlertPoint System, AlertPoint also hired Ali Asghari as a W-2 employee.  Mr. Asghari worked for AlertPoint from May 5, 2017, to December 31, 2017.  During his time with AlertPoint, Mr. Asghari worked as the Vice President of Technology where he wrote code for AlertPoint software, including for the infrastructure architecture and the mobile application. Mr. Asghari has never worked for RoomPro as a contractor or an employee.

39.

On May 31, 2017, Mr. Manivannan officially transitioned from an EDCO employee to an AlertPoint employee, where he continued to perform the same tasks with respect to the AlertPoint System.  Notably, Mr. Manivannan has never worked for RoomPro.

40.

To assist with the development of the AlertPoint System, AlertPoint retained EFS Solutions, Inc. ("EFS") as an independent contractor for the time period beginning on June 15, 2017, and ending on April 13, 2018.  During that time, EFS worked exclusively on the AlertPoint System, including, but not limited to writing firmware for the AlertPoint System.  EFS was paid by AlertPoint as an independent contractor and all of the work EFS performed was on a work-for-hire basis.  EFS's only employee, Matthew Bartholomew, has never worked for RoomPro.

41.

AlertPoint also hired Naveen Baskaran to help with the development of the AlertPoint System.   Mr. Baskaran worked for AlertPoint as an independent contractor from August 17, 2017, through January 6, 2018.  On January 8, 2018, Mr. Baskaran became a W-2 employee at AlertPoint.   Since August 2017, Mr. Baskaran has worked exclusively on the AlertPoint System, including, but not limited to testing equipment, constructing hubs, and writing software code for the AlertPoint System.  All of the work Mr. Baskaran has performed has been on a work-for-hire basis or as an employee of AlertPoint.  Mr. Baskaran has never worked for RoomPro.

42.

AlertPoint began performing beta testing of the AlertPoint System in a school setting in early 2017.

43.

AlertPoint continued to make changes to the software for the AlertPoint System during the beta testing.

44.

On November 29, 2017, AlertPoint filed a provisional patent for the AlertPoint System, in which David Allen was identified as the inventor of the AlertPoint System.

45.

Changes continued to be made to the software up through and until the installation of the AlertPoint System in another area school in early 2018.

46.

To date, AlertPoint has spent more than $1.7 million on the development of the AlertPoint System.

47.

The software for the AlertPoint System has been written by several different contract software developers and software development companies, including, but

not limited to, Mohammed Lakkadshaw, Gadgeon, EFS, Project Drivers, and Ali Asghari.

48.

All of the software written for the AlertPoint System by contract software developers and software development companies, including by Mohammed Lakkadshaw, Gadgeon, EFS, Power Drivers, and Ali Asghari was done either on a work-for-hire basis and/or as an employee of AlertPoint.

49.

Dean Olds did not write any of the software for the AlertPoint System.

50.

No RoomPro employee wrote any of the software for the AlertPoint System.

51.

To the extent any of the software for the AlertPoint System was written by Dean Olds or Mike Matera, it was done on a work-for-hire basis and as employees of AlertPoint and is owned by AlertPoint.

52.

On August 1, 2018, Dean Olds resigned as an employee of AlertPoint.  In his resignation letter, Mr. Olds claimed to own, either individually or through RoomPro, some of the "technology" utilized by the AlertPoint System.  In addition, Mr. Olds

purported to terminate AlertPoint's rights to utilize said "technology."  A true and correct copy of the letter is attached hereto as **Exhibit A**.

53.

On August 7, 2018, AlertPoint received a letter from counsel for 34ED, LLC ("34ED").  A true and correct copy of the letter is attached hereto as **Exhibit B**.  In the letter, counsel for 34ED represents that RoomPro and Dean Olds purportedly sold 34ED certain assets, including software, hardware, software and hardware designs, programmers' notes, technical descriptions, and specifications related to the AlertPoint Sytem.  In addition, counsel for 34ED stated that 34ED would only "allow" AlertPoint to continue to use its AlertPoint System if, *inter alia*, it: (i) transferred to 34ED all right, title, and interest in and to the AlertPoint System, including all intellectual property rights therein; and (ii) entered into a **five-year** agreement with 34ED whereby AlertPoint would pay 34ED for the use of the AlertPoint System.

54.

The software supporting the AlertPoint System is radically different than the software supporting any of RoomPro's products.  In addition, the software supporting the AlertPoint System has changed dramatically over time, *i.e.*, the software supporting the AlertPoint System as of January 1, 2016, is substantially

different than the software supporting the AlertPoint System as of January 1, 2017, which is substantially different than the software supporting the AlertPoint System as of January 1, 2018.  The software supporting the AlertPoint System is neither interchangeable with nor will support the RoomPro products.

## COUNT I
## DECLARATORY JUDGMENT

### 55.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

### 56.

A substantial controversy exists between AlertPoint, Dean Olds, and RoomPro regarding the ownership of the hardware and software associated with the AlertPoint System.

### 57.

Dean Olds and RoomPro have taken the position that they own at least some of the hardware and software associated with the AlertPoint System.  In contrast, AlertPoint has paid for and believes that it owns the hardware and software associated with the AlertPoint System.  Thus, AlertPoint, Dean Olds, and Room Pro have adverse legal interests.

58.

On August 7, 2018, AlertPoint received notice that Dean Olds and RoomPro purportedly sold some of the hardware and software associated with the AlertPoint System to 34ED.

59.

Dean Olds, RoomPro, and 34ED have all instructed AlertPoint that it must cease and desist from utilizing the AlertPoint System—a system that AlertPoint spent over $1.7 million creating.  Thus, there is sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

60.

AlertPoint requests that the Court issue a declaratory judgment finding that AlertPoint owns the hardware, software, software and hardware designs, programmers' notes, technical descriptions, specifications, and all intellectual property, to include patents, trademarks, tradedress, and copyrights associated with the AlertPoint System, and specifically that AlertPoint owns the copyrights to the software supporting the AlertPoint System because it was created on a work-for-hire basis and paid for by AlertPoint.

## COUNT II
## BREACH OF FIDUCIARY DUTY

61.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

62.

Dean Olds owed AlertPoint a fiduciary duty as the CEO of the company.

63.

As the CEO of the company, Dean Olds also owed AlertPoint the following duties:

(a) Duty of loyalty;

(b) Duty of full disclosure;

(c) Duty of good faith and fidelity;

(d) Duty to act fairly;

(e) Duty of confidentiality;

(f) Duty of care;

(g) Duty of faithfulness to the principal; and

(h) Duty to provide accurate information.

64.

Dean Olds breached his fiduciary duty to AlertPoint by negotiating with other companies regarding the sale of AlertPoint's assets.

65.

Dean Olds breached his fiduciary duty to AlertPoint by not informing Mr. Allen that negotiations were taking place regarding the sale of AlertPoint assets.

66.

Dean Olds breached his fiduciary duty to AlertPoint by using company funds to pay for his personal expenses.

67.

As a result of Mr. Olds' breach of fiduciary duties, AlertPoint has suffered damages in an amount to be proven at trial.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS

68.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

69.

This cause of action is to remedy acts of acquisition of trade secrets via improper means and acts of misappropriation of trade secrets under the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq*.

70.

AlertPoint's software, software and hardware designs, programmers' notes, technical descriptions, and specifications constitute trade secrets (the "Trade Secrets").

71.

AlertPoint's Trade Secrets are comprised of information not commonly known by or available to the public.  AlertPoint's Trade Secrets derive economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

72.

AlertPoint takes care and makes efforts that are reasonable under the circumstances to maintain the secrecy of its trade secret data.  Specifically, AlertPoint takes the following steps to protect its trade secrets:

- The company employs commercially reasonable measures to secure its offices;

- The company does not publicly publish any of its trade secrets;

- The company has a handbook that instructs its employees on the treatment and protection of confidential and trade secret information;

- Employees receive regular instruction at company meetings regarding the treatment and protection of confidential and trade secret information;

- As a general rule, employees are required to execute confidentiality agreements and non-disclosure agreements;

- Company computers are password protected;

- File cabinets containing confidential and trade secret information are to be kept locked;

- If documents containing trade secret or confidential information are utilized at a meeting, the documents are promptly collected after the meeting and destroyed via the company's paper shredder;

- The company utilizes a paper shredder to destroy superfluous confidential and trade secret documents;

- Employees are instructed to mark "Confidential" all emails containing confidential and/or trade secret information and to place a "Confidential" watermark on any sensitive documents that are emailed outside the company;

- Access to confidential and trade secret information was only granted to necessary individuals;

- As a general rule, software code created for the company is password protected and only certain, designated individuals within the company had access to the password;

- The software supporting the AlertPoint System is password protected; and

- As a general rule, AlertPoint requires individuals and companies who create software or work with AlertPoint's sensitive information to execute a non-disclosure agreement.

73.

Upon information and belief, Dean Olds and RoomPro have taken AlertPoint's Trade Secret information through improper means as defined under O.C.G.A. § 10-1-761.

74.

Upon information and belief, Dean Olds and RoomPro have sold AlertPoint's Trade Secrets to 34ED.

75.

AlertPoint is entitled to recover its actual damages for the misappropriation of its Trade Secrets, including any unjust enrichment enjoyed by Defendants as a result of that misappropriation which, pursuant to O.C.G.A. § 10-1-763(a), is not taken into account in computing the actual loss.

76.

AlertPoint is also entitled to recover a reasonable royalty for Defendants' unauthorized disclosure and use of AlertPoint's Trade Secrets.

77.

Defendants have engaged and continue to engage in this activity knowingly, willfully, and maliciously, so as to justify the assessment of increased and punitive damages against them in an amount to be determined at trial.

78.

Defendants' misappropriation of AlertPoint's Trade Secrets was willful and malicious with the result that AlertPoint is entitled to recover exemplary damages in an amount not exceeding twice its actual loss and Defendants' unjust enrichment pursuant to O.C.G.A. § 10-1-763(b).

79.

By reason of Defendants' willful and malicious misappropriation, AlertPoint is also entitled to recover its reasonable attorneys' fees and costs incurred in connection with this litigation pursuant to O.C.G.A. § 10-1-764.

**COUNT IV**
**CONVERSION**

80.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

81.

Dean Olds improperly and without authorization converted AlertPoint funds for his personal use, including, but not limited to, improperly and without authorization withdrawing funds from an AlertPoint bank account for the purpose of allegedly paying his personal credit card.

82.

AlertPoint is entitled to recover the damages it incurred as a result of Defendants' conversion.

**COUNT V**
**ATTORNEYS' FEES AND COSTS**

83.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

84.

Defendants have been stubbornly litigious, have acted in bad faith, and have caused AlertPoint unnecessary trouble and expense entitling AlertPoint to recover its attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## COUNT VI
## PUNITIVE DAMAGES

85.

AlertPoint incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

86.

Defendants' conduct was willful, malicious, fraudulent, wanton, oppressive, and evidenced that entire want of care which raises the presumption of conscious indifference to consequences, thus justifying the award of punitive damages to AlertPoint pursuant to O.C.G.A. § 51-12-5.1.

87.

Defendants acted, or failed to act, with the specific intent to cause harm to AlertPoint such that there is no limitation regarding the amount which AlertPoint may be awarded as punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## PRAYER FOR RELIEF

WHEREFORE, AlertPoint respectfully requests that the Court provide the following relief:

(a)    That the Court find in favor of AlertPoint on Count I (Declaratory Judgment) and issue a declaratory judgment finding that that AlertPoint owns the hardware, software, software and hardware designs,

programmers' notes, technical descriptions, specifications, and all intellectual property, to include patents, trademarks, tradedress, and copyrights associated with the AlertPoint System, and specifically that AlertPoint owns the copyrights to the software supporting the AlertPoint System because it was created on a work-for-hire basis and paid for by AlertPoint;

(b)     Enter judgment in favor of AlertPoint and against Dean Olds on Count II (Breach of Fiduciary Duty) in an amount to be proven at trial;

(c)     Enter judgment in favor of AlertPoint and against Dean Olds and RoomPro on Count III (Misappropriation of Trade Secrets) in an amount to be proven at trial;

(d)     Enter judgment in favor of AlertPoint and against Dean Olds and RoomPro on Count IV (Conversion) in an amount to be proven at trial;

(e)      Enter judgment in favor of AlertPoint and against Dean Olds and RoomPro on Count V (Attorneys' Fees) in an amount to be proven at trial;

(f)      Enter judgment in favor of AlertPoint and against Dean Olds and RoomPro on Count VI (Punitive Damages) in an amount to be proven at trial; and

(g)     Award such other relief to Plaintiff that the Court deems just and

proper.

This 14th day of August 2018.

                                        **HOLLAND & KNIGHT LLP**

                                        */s/ A. André Hendrick*
                                        A. André Hendrick, Esq.
                                        Georgia Bar No. 774212
                                        Jeffery B. Arnold, Esq.
                                        Georgia Bar No. 023369
                                        Regions Plaza, Suite 1800
                                        1180 West Peachtree Street
                                        Atlanta, Georgia  30309
                                        Telephone:  (404) 817-8500
                                        Facsimile:  (404) 881-0470
                                        E-Mail:  andre.hendrick@hklaw.com
                                        E-Mail:  jeff.arnold@hklaw.com

                                        *Attorneys for Plaintiff AlertPoint,*
                                        *LLC*

## **LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel for AlertPoint, LLC hereby certifies that the within and foregoing document was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 14th day of August 2018.

**HOLLAND & KNIGHT LLP**

*/s/ A. André Hendrick*              A.
André Hendrick, Esq.
Georgia Bar No. 774212

*Attorney for Plaintiff AlertPoint, LLC*

- 28 -

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALERTPOINT, LLC     )
           )
  Plaintiff,     )  CIVIL ACTION FILE
           )
v.          )  NO. _____
           )
DEAN OLDS and ROOMPRO  )
TECHNOLOGIES, INC.,   )  Jury Trial Requested
           )
  Defendants.    )
_____)

## **VERIFICATION**

I, David G. Allen, being duly sworn on oath, deposes and says that: (1) I hold the title and position indicated below with AlertPoint, LLC; (2) that I sign this Verification in support of the Verified Complaint on behalf of Plaintiff AlertPoint, LLC ("AlertPoint" or "Plaintiff"); (3) that I am duly authorized to execute this Verification; (4) that the matters stated in the Verified Complaint are not all within my personal knowledge and that I am informed that there is no officer or employee of Plaintiff who has personal knowledge of all such matters; (5) that the facts stated in the within and foregoing Verified Complaint have been assembled by authorized employees and counsel of Plaintiff; (6) and that I am informed and believe that the facts stated in the Verified Complaint are true and correct.

This 14 day of August, 2018.

David G. Allen
President of AlertPoint, LLC

Sworn to and subscribed before me this

14th day of August, 2018.

Notary Public

CHRISTINA EVANS
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 28, 2021
COBB COUNTY, GEORGIA

# Exhibit A

August 1, 2018


AlertPoint, LLC
David Allen
1201 Roberts Blvd., Suite 100
Kennesaw, GA 30144


Attn:  Mr. David Allen

Re:    Resignation and termination of licenses

Dear David:

      I am writing to you to inform you that I am no longer willing to work under the conditions that exist at AlertPoint, LLC.  Accordingly, I hereby resign as an employee of AlertPoint, LLC, as well as any other position that I may hold.

      In our discussions about joining AlertPoint, LLC, we were to be entering into this venture as equals, with my contribution of the crisis management technology I developed at my company, RoomPro, in exchange for 50% of the equity in AlertPoint, LLC. I later joined AlertPoint, LLC as an employee while we continued to have discussions about the profitable exploitation of this technology together. During those discussions,  I did not and have not assigned my rights in the technology that I brought from RoomPro to AlertPoint, LLC.

      It has been over 1½ years, and there is still no resolution. In addition, your management of the cash at AlertPoint, LLC has caused significant delays in my reimbursement of company expenses I am due. It has also made it exceedingly difficult for AlertPoint, LLC to keep its commitments that it has made to developers, vendors and customers.  I refuse to continue working at AlertPoint, LLC where it is now negatively impacting my personal and professional reputation.

      Since the promises of equity will never be fulfilled, any right of AlertPoint, LLC, you, or any of your affiliated companies to use the RoomPro technology is hereby terminated. Therefore, you are hereby directed to cease all use of my technology, return all copies of my technology to me, other than the technology that you may have on magnetic or optical media, which you are hereby directed to permanently destroy all copies of my technology on that media.

      For the purposes of this letter, I'm willing to assume that any improvements made to the RoomPro technology while I worked at AlertPoint, LLC are owned by AlertPoint, LLC,  and not me. I do not concede this point, but

I am willing to make this assumption only for the purposes of this letter. Under the assumption that AlertPoint, LLC "owns" those modifications, your entitlement to those modifications only extends to those portions of the technology that have been modified since I provided my technology to AlertPoint, LLC and not my technology or itself.

Therefore, to the extent that your modifications use any part of my technology, then that modified technology constitutes a derivative work of my technology. You are not authorized to create or use any derivative work of my technology. Again, only for the purposes of this letter, I assume that to the extent that you can separate the AlertPoint, LLC modifications from my technology, you'll still be free to use those modifications, so long as you do not use any of my underlying technology, names, or infringe on any rights they are protected under.

Finally, the exclusive rights that I possess as the owner of my technology include not only the exclusive rights to make copies and make modifications (i.e., derivative works), I also possess the exclusive right to distribute my technology. Accordingly, neither AlertPoint, LLC, you, nor any of your companies are authorized to distribute my technology or any part of my technology.

I had high hopes for our working together to our mutual economic benefit. It has become very clear to me that working together as co-owners will never occur; indeed, you may have never intended to deliver on the business relationship we discussed.

This letter leaves a lot of things unsaid and a lot of things undone. There are other issues that have not been addressed in this letter. Accordingly, this letter is without prejudice to any other rights that I may have against AlertPoint, LLC, you individually, or any other entity owned or controlled by you, as well as any other obligations that you and your entities may have to me.

Sincerely,

Dean Olds

# Exhibit B



MORRIS,
MANNING &
MARTIN, LLP

**Paul H. Arne**
404-504-7784
pha@mmmlaw.com
www.mmmlaw.com

August 7, 2018

**BY HAND DELIVERY**

Alertpoint, LLC
1201 Roberts Blvd.
Suite 100
Kennesaw, GA 30144

Attn: Mr. David Allen

Re:     Unauthorized use of technology formerly owned by RoomPro Technologies, Inc.

Dear Mr. Allen:

I represent 34ED, LLC ("34ED") in this matter. Please direct all communications and correspondence regarding this matter to me.

There is a proposal made in this letter, near the end. The proposal is available for a limited time only. 34ED requests your response, to me, within seven days, i.e., on or before August 14.

34ED has recently entered into a transaction whereby 34ED purchased certain technology assets of RoomPro Technologies, Inc. ("RoomPro") and Dean Olds (all software, hardware, software and hardware designs, programmers' notes, technical descriptions, specifications, and the like are referred to as the "RoomPro System"), including all intellectual property rights therein. The RoomPro System is a crisis management solution that Mr. Olds and RoomPro had been developing prior to the time that Mr. Olds apparently joined Alertpoint as an employee.

We are aware that Mr. Olds has resigned from Alertpoint, as well as delivered to you a termination of all rights, including the right to copy, create derivative works of, distribute, make, use, sell, and otherwise exploit the RoomPro System that you, Alertpoint, or any other entity controlled by you (you and such entities collectively, the "Alertpoint Entities") may have had in the RoomPro System. Unless otherwise specified, all references to "you" in this letter refer to all Alertpoint Entities.

This is your notice that you have no right to use the RoomPro System for any purpose. You are not authorized to make copies of, modify, distribute, publicly perform, make, sell, license, provide services using, or in any other way use the RoomPro System for any purpose whatsoever. In addition, you have no right to distribute the RoomPro System, or any derivative works of the RoomPro System, to anyone. 34ED demands that you cease and desist from all such activities.

This direction to cease and desist includes all persons or entities to which you may have provided licenses to the RoomPro System or its derivatives.

MORRIS, MANNING & MARTIN, LLP

Mr. David Allen
Alertpoint, LLC
Page 2

34ED demands that you return all copies of the RoomPro System, and everything that would constitute a derivative work of the RoomPro System, to 34ED. To the extent that the RoomPro System or derivatives thereof reside on electronic media owned or otherwise used by you, 34ED demands that you permanently destroy all copies of the RoomPro System and derivatives thereof that are contained on such media. When you have completed these tasks, you should certify to 34ED that this has been accomplished.

It is our understanding that Alertpoint has made certain modifications to the RoomPro System that were made during Mr. Old's tenure as an employee of Alertpoint (the "Alertpoint Modifications"). While 34ED makes no claim to ownership of any intellectual property rights in the Alertpoint Modifications, 34ED does not waive any rights associated with the same. I do not represent Mr. Olds or RoomPro, so this letter does not speak to any rights that Mr. Olds or RoomPro has to the Alertpoint Modifications. However, to the extent that any of those modifications use or are derivative works of the underlying RoomPro System, you have no right to create, use, distribute, or otherwise exploit those derivative works.

Is also our understanding that Alertpoint has agreed with the Cobb County School District (the "District") to provide certain technologies and services to the District that involve the RoomPro System or derivatives of the RoomPro System. While 34ED does not wish to cause you or Alertpoint any undue difficulties, 34ED is also not inclined to give away any rights owned by 34ED to you, including any license rights.

However, 34ED is willing to undertake discussions with you towards the goal of supporting your business relationship with the District. Below is a list of terms that would be required in any such relationship. Note that this is not an offer for an agreement, and your "acceptance" of this letter does not create any agreement between 34ED and you. No agreement will be binding on 34ED until you and 34ED each execute a mutually agreeable definitive agreement.

1.  Based upon the existence of Alertpoint Modifications, 34ED is currently unable to provide you with any assistance associated with your business relationship with the District. 34ED is simply not in possession of the technology necessary to provide support to you. 34ED is absolutely unwilling to entertain any ongoing relationship with you where there is any risk of a claim that any technologies or other assets used by 34ED is owned by you or that you have any claim against 34ED. 34ED is also unwilling to devote the resources that would be necessary for 34ED to split the RoomPro System technology into two different development paths, one for the support of the District and one for 34ED's own use. Accordingly, as a condition to providing services to you for the benefit of the District, 34ED will require that you transfer all right, title and interest in and to the Alertpoint Modifications, including all intellectual property rights therein, to 34ED. This transfer would require ordinary and customary assurances of your ownership of the Alertpoint Modifications, as well as the lack of any liens on this property. Certain due diligence items may be needed as a part of this proposed transaction, as determined by 34ED.

2.  34ED is not interested in any relationship where 34ED assists you with your relationship with the District only to have you assert any claim against 34ED, its officers, directors or employees, whether they are claims related to ownership of the RoomPro System,

MORRIS, MANNING & MARTIN, LLP

Mr. David Allen
Alertpoint, LLC
Page 3

ownership of the Alertpoint Modifications, or any other claim whatsoever. Accordingly, in addition to the assignment in paragraph #1 above, you will assign any interest, including any intellectual property rights (which includes, without limitation, any patent rights you may assert or have filed), in and to the RoomPro System to 34ED and release, waive, and forever discharge any claims that you may have against 34ED, its employees, officers, directors, and shareholders, related to any claim of ownership of the RoomPro System, as well as the Alertpoint Modifications, or any other claim, as well as any such claims that you may have against Mr. Olds and RoomPro.

3. 34ED will license the RoomPro System, as modified by Alertpoint Modifications (collectively, and maybe modified as provided in this letter, the "District System"), to Alertpoint solely for its use to provide the products and services that use the District System under Alertpoint's existing agreement with the District.

4. 34ED will also provide at no additional cost any modifications that 34ED makes to the RoomPro System, but only so long as these modifications are made by 34ED for its own products and services and only so long as such modifications can be used by the District System without further modification. 34ED will have no obligation to create these modifications, but only to provide the relevant modifications as and when created, if any.

5. 34ED will provide software support for the District System, solely for the purposes of fixing errors in the RoomPro System software, as modified as described in this letter. 34ED will not be responsible for maintaining any help desk for the District. Alertpoint will be responsible for providing this help desk, adequate training of its personnel in connection with the help desk, and specially trained personnel who are able to be the second responders to any questions that the help desk personnel cannot immediately answer. It is only when the second responders have determined that there is an error that 34ED may be called. The District will not have the option or opportunity to communicate with 34ED directly. No installation or integration services will be provided.

6. 34ED will have no responsibility to provide modifications to the RoomPro System or software support if Alertpoint is in default under the terms of the definitive agreement. 34ED may also terminate the definitive agreement, including all licenses, for a default by Alertpoint.

7. Alertpoint will pay 34ED for the licenses to the District System, for its support services, and for provision of any applicable modifications, in a manner and in the amounts mutually agreed between Alertpoint and 34ED. 34ED believes that these price points should be reflective of the amount of software actually being used by the District from time to time, rather than a fixed fee.

8. The term of this arrangement will be five years, with no renewals.

9. The definitive agreement will contain other provisions that are generally contained in agreements of this sort.

MORRIS, MANNING & MARTIN, LLP

Mr. David Allen
Alertpoint, LLC
Page 4

34ED does not speak for Mr. Olds or RoomPro. I and my law firm do not represent Mr. Olds or
RoomPro. This letter is, and the definitive agreement will be, without prejudice to any claims that Mr.
Olds or RoomPro may have against you. Mr. Olds is not authorized to negotiate on behalf of 34ED or
enter into any agreement that binds 34ED.

34ED intends to immediately begin to modify and enhance the RoomPro System. Accordingly,
the ability to incorporate the Alertpoint Modifications into the RoomPro System will only be available for
a limited time. 34ED will only be able to ensure that its new modifications to the RoomPro System are
compatible with the Alertpoint Modifications if those are made available to 34ED in the very near term.

If the terms of a definitive agreement are not agreed within a very short period of time, you can
expect that 34ED will not consider the agreement outlined above as viable. Therefore, please let me know
the following within the next 7 days from the date of this letter:

    (a)  Whether Alertpoint is willing to comply with its obligations to cease use of the RoomPro
         System; and

    (b)  Whether Alertpoint is willing to enter into discussions related to an agreement that is in
         line with the requirements set forth above.

Please be governed accordingly.

Sincerely,

MORRIS, MANNING & MARTIN, LLP

By: Paul H. Arne, Partner

cc:    CEO, 34ED

PHA: