IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALERTPOINT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>DEAN OLDS and ROOMPRO TECHNOLOGIES, INC.,<br><br>Defendants.<br>v.<br><br>DAVID ALLEN and EDCO-EDUCATIONAL CONSULTANTS, INC.,<br><br>Proposed Counterclaim Defendants. | Case No.: 1:18-CV-03879-ELR |

**ANSWER TO AMENDED COMPLAINT,**
**AND DEFENDANTS' COUNTERCLAIM,**
**AND THIRD-PARTY COMPLAINT**

Dean Olds and RoomPro Technologies, Inc. ("Defendants") file this Answer to Plaintiff's First Amended Verified Complaint (Dkt. 21) ("Amended Complaint") and state as follows:

Affirmative Defenses

1.

Some or all of the claims in the Amended Complaint are barred by waiver.

2.

Some or all of the claims in the Amended Complaint are barred by unclean hands.

3.

Some or all of the claims in the Amended Complaint are barred by estoppel.

4.

Some or all of the claims in the Amended Complaint are barred by Plaintiff's failure to mitigate its alleged damages.

5.

The Court lacks subject matter jurisdiction over Plaintiff's claim for Declaratory Judgment (Count I) because Plaintiff does not have a copyright registration for the work it claims to own in Paragraphs 73-80 of the Amended Complaint.

6.

Defendants reserve the right to assert additional affirmative defenses as they become apparent through investigation and discovery.

**Answers to the Numbered Paragraphs in the Complaint**

Parties and Jurisdiction

1.

The allegations in Paragraph 1 of the Amended Complaint are admitted.

2.

The allegations in Paragraph 2 of the Amended Complaint are admitted.

3.

Defendants admit that RoomPro is a Wisconsin corporation and Dean Olds is the registered agent for RoomPro. Defendants also admit Mr. Olds is the President, Chief Executive Officer, and sole shareholder of RoomPro. Any other allegations in Paragraph 3 of the Amended Complaint are denied.

4.

Defendants deny that this Court has subject matter jurisdiction over Plaintiff's claim for Declaratory Judgment (Count I). For the remaining five counts in the Complaint (Counts II through VI (¶¶61-87)), Plaintiff relies on this Court's supplemental jurisdiction as those Counts all arise under the laws of the State of Georgia.

5.

Defendants do not dispute that they are subject to this Court's personal jurisdiction.

6.

Defendants agree that venue is proper.

**Factual Background of the Amended Complaint**

7.

Defendants admit that Plaintiff is a privately held company. The remaining allegations in this Paragraph of the Amended Complaint are denied. In further response, Defendants deny the accuracy of Plaintiff's definition of "Alertpoint System." Rather than restating this denial in response to each instance Plaintiff uses the term "Alertpoint System," Defendants incorporate this denial into each such paragraph wherein that term is used.

8.

The allegations in Paragraph 8 of the Amended Complaint are admitted except Defendants deny that the "Alertpoint System" is owned by (or "proprietary" to) Plaintiff.

9. through 17.

As to Paragraphs 9 through 17, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore, those allegations are denied.

18.

The allegations in Paragraph 18 are admitted but, in further response, Defendants state that Paragraph 18 only describes some (not all) of the goods and services offered by RoomPro.

19.

The allegations in Paragraph 19 of the Amended Complaint are admitted.

20.

The allegations in Paragraph 20 of the Amended Complaint are admitted.

21.

The allegations in Paragraph 21 of the Amended Complaint are denied.

22.

Defendants admit that Mr. Olds relocated from Wisconsin to Georgia in the Fall of 2015. Defendants also admit that around that time, Mr. Olds and Mr. Allen discussed doing business together. The remaining allegations in Paragraph 23 are denied.

23.

Defendants admit that Mr. Olds occasionally worked from empty office space Plaintiff had in Canton, Georgia. Defendants also admit that they were working on the Alertpoint System but deny that Plaintiff had any ownership interest in the Alertpoint system, as "Alertpoint System" is defined in the Amended Complaint.

24.

Defendants admit that in the first half of 2016. Mr. Olds occasionally worked from empty office space Plaintiff had in Canton, Georgia. Defendants also admit that they were working on the Alertpoint System but deny that Plaintiff had any

ownership interest in the Alertpoint system, as "Alertpoint System" is defined in the Amended Complaint. Defendants admit that they were not asked to pay rent in 2016.

25.

The allegations in Paragraph 25 are admitted but, again, Defendants deny that Plaintiff had any ownership interest in the Alertpoint System, as "Alertpoint System" is defined in the Amended Complaint.

26.

Defendants deny the allegations in Paragraph 26.

27.

Defendants deny the allegations in the first sentence of Paragraph 27. The allegations in the second sentence are admitted, but, in further response, Defendants state that only some of Mr. Olds' responsibilities are described in this second sentence. The allegations in the third sentence are denied because Mr. Olds did not "report" to Mr. Allen.

28.

The allegations in Paragraph 28 of the Amended Complaint are denied.

29.

The allegations in Paragraph 29 of the Amended Complaint are denied.

30.

Defendants admit that in the first half of 2016 Mr. Olds occasionally worked from empty office space Plaintiff had in Canton, Georgia. Defendants also admit that they were working on the Alertpoint System but deny that Plaintiff had any ownership interest in the Alertpoint system, as "Alertpoint System" is defined in the Amended Complaint. The remaining allegations in Paragraph 30 of the Amended Complaint are denied.

31.

The allegations in Paragraph 31 of the Amended Complaint are denied.

32.

The allegations in Paragraph 32 of the Amended Complaint are denied.

33.

The allegations in Paragraph 33 of the Amended Complaint are denied.

34.

The allegations in Paragraph 34 of the Amended Complaint are denied.

35.

Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations, and therefore, they are denied.

36.

The allegations in Paragraph 33 of the Amended Complaint are too vague for a response. More specifically, the meaning of "served" is unclear, making it impossible for Defendants to respond. To the extent an additional response is required, the allegations in Paragraph 36 of the Amended Complaint are denied.

37.

The allegations in Paragraph 37 of the Amended Complaint are too vague for a response. More specifically, the meaning of "corporate officer" is unclear, making it impossible for Defendants to respond. To the extent an additional response is required, the allegations in Paragraph 37 of the Amended Complaint are denied.

38.

The allegations in Paragraph 38 of the Amended Complaint are too vague to be answered. More specifically, the Paragraph is unclear about who is alleged to have been required to make an assignment. The Paragraph is also unclear about who is alleged to have received the assignment, if anyone. To the extent an additional response is required, the allegations in Paragraph 38 of the Amended Complaint are denied.

39.

The allegations in Paragraph 39 of the Amended Complaint are denied.

40.

The allegations in Paragraph 40 of the Amended Complaint are too vague to be answered. More specifically, the Paragraph's use of "completed" is too vague. To the extent an additional response is required, the allegations in Paragraph 40 of the Amended Complaint are denied.

41.

The allegations in Paragraph 41 of the Amended Complaint are too vague to be answered. More specifically, the Paragraph's use of "officially" is too vague. To the extent an additional response is required, the allegations in Paragraph 41 of the Amended Complaint are denied.

42-49.

The allegations in Paragraphs 42 through 49 of the Amended Complaint are denied.

50-52.

The allegations in Paragraphs 50 through 52 of the Amended Complaint are admitted. Defendants deny Plaintiff's insinuation that the "Alertpoint System" is owned by (or "proprietary" to) Plaintiff.

53.

Defendants lack knowledge or information sufficient to know what patent applications, if any, Plaintiff has filed nor who was identified as the "inventor" (or

inventors) in any such application, and therefore, the allegations in Paragraph 53 are denied. In further response, Defendants deny that Mr. Allen is an inventor of the AlertPoint System, as "inventor" is defined by United States patent law.

54.

Defendants admit that the software regularly changes. Defendants deny any insinuation that the "Alertpoint System" is owned by (or "proprietary" to) Plaintiff.

55.

Again, Defendants deny Plaintiff's definition of "Alertpoint System." In further response, Defendants lack knowledge or information sufficient to form a belief about how much money Plaintiff has spent in connection with the Alertpoint System, the truth of the allegations, and therefore, the allegations of Paragraph 55 are denied.

56.

Defendants admit that the alert system in question has been written by several different contract software developers and software development companies. Mohammed Lakkadshaw, John and Gadgeon performed work from 2013 through 2016. EFS, Project Drivers, and Ali Asghari were only retained after January 1, 2017.

57-58.

The allegations in Paragraphs 57 through 58 of the Amended Complaint are denied.

59.

Defendants admit that, in July 2018, Mohammed Lakkadshaw assigned his intellectual property rights relating to his contribution to development of the RoomPro ALERT System/AlertPoint System to RoomPro. All other allegations in Paragraph 59 are denied.

60.

The allegations in Paragraph 60 of the Amended Complaint are denied.

61.

Defendants admit that, in July 2018, Gadgeon assigned its intellectual property rights relating to its contribution to development of the RoomPro ALERT System/AlertPoint System to RoomPro. All other allegations in Paragraph 61 are denied.

62.

The allegations in Paragraph 62 of the Amended Complaint are denied.

63-72.

The allegations in Paragraphs 63 through 72 of the Amended Complaint are denied.

Count I – Declaratory Judgment

73.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

74.

The allegations in Paragraph 74 of the Amended Complaint consist of legal conclusions which require no response from Defendants. To the extent any additional response is required, the allegations are denied.

75.

Defendants admit that RoomPro owns the hardware, designs, source code, software, programmers' notes, technical descriptions, specifications, and all other intellectual property associated with the RoomPro ALERT System. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 75 of the Amended Complaint, and therefore, those allegations are denied. The allegations in the third sentence of Paragraph 75 of the Amended Complaint consists of legal conclusions which require no response from Defendants. To the extent any additional response is required, the allegations are denied. (As used throughout this pleading, "RoomPro ALERT System," means a surveillance and emergency alert notification system for schools developed and owned by Defendant RoomPro which allows school teachers to trigger an alert so

school administrators or school security personnel can quickly respond to a crisis or threatening situation). Defendants add that what Plaintiff refers to in its Verified Compalint as the "Alertpoint System" is an unauthorized derivative work of the RoomPro ALERT System. Furthermore, the so-called Alertpoint System cannot work (*i.e.*, is dependent upon) the RoomPro ALERT System.

76.

The allegations in Paragraph 76 of the Amended Complaint are denied. In further response, Defendants state that by December 2015, Defendants had invested more than $600,000.00 in development of RoomPro ALERT System. Around that time, Mr. Olds told Mr. Allen that RoomPro would have difficulties funding further development of the RoomPro ALERT System. January 2016, EDCO began lending RoomPro money so RoomPro could afford all of the expenses relating to further development of its products, including the RoomPro ALERT System. On July 26, 2016, EDCO, RoomPro, and Mr. Olds executed a Promissory Note memorializing the loan from EDCO to RoomPro, which was fully repaid by RoomPro. The RoomPro ALERT System intellectual property was collateral for the loan.

77.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77 of the Amended Complaint, and therefore, those allegations are denied.

78.

Defendants admit that Dean Olds, RoomPro, and 34ED have instructed AlertPoint that it must stop using the intellectual property within the RoomPro ALERT System. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 78 of the Amended Complaint, and therefore, those allegations are denied.

79.

The allegations in Paragraph 79 of the Amended Complaint are not directed to Defendants and, therefore, no response is required from Defendants. To the extent any additional response is required, the allegations are denied.

80.

The allegations in Paragraph 80 of the Amended Complaint are not directed to Defendants and, therefore, no response is required from Defendants. To the extent any additional response is required, the allegations are denied.

Count II – Unjust Enrichment

81.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

82.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 82 of the Amended Complaint, and therefore, those allegations are denied. The allegations in the second sentence of Paragraph 82 of the Amended Complaint are not directed to Defendants and, therefore, no response is required from Defendants. To the extent any additional response is required, the allegations are denied.

83-86.

The allegations in Paragraphs 83 through 86 of the Amended Complaint are denied.

Count III – *Quantum Meriut*

87.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

88.

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 88 of the Amended Complaint, and therefore, those allegations are denied. The allegations in the second sentence of Paragraph 88 of the Amended Complaint are not directed to Defendants

and, therefore, no response is required from Defendants. To the extent any additional response is required, the allegations are denied.

89-93.

The allegations in Paragraphs 89 through 93 of the Amended Complaint are denied.

Count IV – Breach of Fiduciary Duty

94.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

95 through 102.

The allegations in Paragraphs 95 through 102 of the Amended Complaint are denied.

Count V – Usurpation of Corporate Opportunities

103.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

104 through 112.

The allegations in Paragraphs 104 through 112 of the Amended Complaint are denied.

Count VI – Misappropriation of Trade Secrets

113.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

114.

The allegations in Paragraph 114 of the Amended Complaint consist of legal conclusions which require no response from Defendants. To the extent any additional response is required, the allegations are denied.

115 through 124.

The allegations in Paragraphs 115 through 124 of the Amended Complaint are denied.

Count VII – Conversion

125.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

126 and 127.

The allegations in Paragraphs 126 and 127 of the Amended Complaint are denied.

Count VIII – Attorneys' Fees and Costs

128.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

129.

The allegations in Paragraph 129 of the Amended Complaint are denied.

Count IX – Punitive Damages

130.

Defendants repeat, reallege, and fully incorporate all preceding paragraphs by reference as if set forth fully herein.

131.

The allegations in Paragraph 131 of the Amended Complaint are denied.

132.

The allegations in Paragraph 132 of the Amended Complaint are denied.

Prayer for Relief

133.

Defendants deny that Plaintiff is entitled to any of the relief it seeks in Paragraphs (a) through (k) of its "Prayer for Relief."

134.

Any allegations not specifically admitted nor invoking Rule 8(b)(5) of the Federal Rules of Civil Procedure are denied.

Jury Trial

135.

Defendants request a trial by jury on all issues so triable.

136.

WHEREFORE, Defendants request that Plaintiff's Amended Complaint be dismissed, with all costs cast upon Plaintiff, for an award of their attorney's fees incurred in defending this action, and for such other relief as justified and allowed by the evidence, and as may be deemed appropriate by the Court.

## DEFENDANTS' COUNTERCLAIM

Jurisdiction

1.

This Court has supplemental jurisdiction over the counterclaims in this action pursuant to 28 U.S.C. Section 1367(a) because Defendants' state law claims are substantially related to Plaintiff's federal claims and arise out of the same case or controversy.

2.

This Court has personal jurisdiction over David Allen as he is a resident of this State and of this judicial district.

3.

This Court has personal jurisdiction over EDCO as it is a Georgia corporation with a principal place of business located at 1201 Roberts Blvd., Suite 100, Kennesaw, Cobb County, Georgia 30144; thus, EDCO is a resident of this State and this judicial district.

4.

Joinder of Mr. Allen is proper pursuant to Rule 19 of the Federal Rules of Civil Procedure as Mr. Allen is a required party who is subject to service of process, whose joinder will not deprive the court of subject matter jurisdiction, and who must be joined because in his absence the Court cannot accord complete relief among existing parties. A Motion to Join Mr. Allen has been filed contemporaneously with this Answer and Counterclaim.

Factual Background

*About Defendants*

5.

Dean Olds ("Mr. Olds") is the President, Chief Executive Officer, and sole shareholder of RoomPro Technologies, Inc. ("RoomPro").

6.

RoomPro was incorporated in the State of Wisconsin on May 6, 2005. RoomPro began as a manufacturer and integrator of audio and visual products for educational, corporate, government, and consumers.

7.

In early 2012, Mr. Olds conceived the RoomPro ALERT System and, on January 27, 2012 he began sharing his initial concept with Mr. Allen.

8.

By January of 2016, RoomPro and Mr. Olds had spent an enormous amount of time and resources developing the RoomPro ALERT System. In fact, by that time, RoomPro spent over $600,000.00 on development.

*About EDCO*

9.

EDCO-Educational Consultants, Inc. ("EDCO") is a Georgia company, created in 2005, which Defendants believe is entirely owned by Mr. Allen.

10.

EDCO supplies audio and visual equipment to school systems in Georgia, including the Cobb County School System.

*About RoomPro, EDCO and David Allen's Initial Relationship*

11.

EDCO and RoomPro began doing business together in 2011. At that time, RoomPro was manufacturing, integrating and distributing audio and visual equipment, such as projectors, mostly designed for schools.

12.

EDCO began buying audio and visual equipment from RoomPro for EDCO to resell to its customers, which were mostly schools.

13.

To govern their business relations, on January 7, 2011, RoomPro and EDCO entered the RoomPro Brand Preferred Partner Agreement (the "January 2011 Agreement").

14.

The January 2011 Agreement was amended on October 15, 2011.

15.

In January of 2012, RoomPro and Mr. Olds conceived a product which was essentially a surveillance and emergency alert notification system for schools.

16.

Mr. Olds shared his initial concept for the RoomPro ALERT System with Mr. Allen *via* email January 27, 2012.

17.

On February 8, 2012, Mr. Olds sent the following summary of the RoomPro ALERT system to Mr. Allen *via* email:

> RoomPro ALERT is a surveillance and emergency alert notification system add-on to the RoomPro ONE or BASE systems. It features a classroom-based Internet camera using an ethernet connection on the wall or ceiling, coupled with a wireless transmitter. With RoomPro ALERT, when the teacher senses a security threat, she can discreetly press a button on the transmitter which triggers a silent response to the situation. Responses include email notifications with photos, audible and visual alarms, and network-based recordings of the incident. Administration or security personnel can log on and watch the real-time activity in the classroom, as well as listening to audio directly from the teacher's microphone system. RoomPro ALERT provides instant notification and critical information needed to respond to crises or threatening situations.

(*See* email attached as Exhibit A).

18.

On February 10, 2012, Mr. Olds gave pricing for the RoomPro ALERT System to Mr. Allen and EDCO along with other products.

19.

At that point, in addition to reselling RoomPro's audio and visual products, Mr. Allen and EDCO were able to resell RoomPro's new product, the RoomPro ALERT System.

To replace the January 2011 Agreement (and its October 2011 Amendment), on March 5, 2013, RoomPro and EDCO entered a RoomPro Brand Reseller Agreement, which is Exhibit B (the "March 2013 Agreement"). This March 2013 Agreement was signed by Mr. Allen on EDCO's behalf, as its CEO. The March 2013 Agreement was a 24-month agreement with another 24-month extension unless terminated in writing, which it was not. The following language was part of the March 2013 Agreement and agreed to between RoomPro and EDCO:

> Trademarks and Proprietary Information. *EDCO acknowledges that all Products and all operating instructions, user manuals and other documentation relating thereto (the "Documentation") are proprietary property of RoomPro and that the Products, the Documentation and all patent, copyright, trade secret, trademark and other intellectual property rights relating thereto remain the exclusive property of RoomPro. EDCO agrees that, except for its rights to resell Products to Qualified Customers as provided herein, EDCO shall not acquire any rights or interest in any Product or Documentation by reason of this Agreement or otherwise and that it will not dispute or take any action inconsistent with any of RoomPro's rights in the Products or the Documentation.* EDCO further acknowledges that RoomPro is the owner of and has exclusive rights to, all trademarks, trade names, service marks, logos, copyrights and other intellectual property used by RoomPro in connection with its business and/or Products (collectively, the "Trademarks"). EDCO agrees that it will not dispute or take any action inconsistent with any of RoomPro's rights in any of the Trademarks and that, if applicable, any materials used by EDCO bearing any Trademarks shall contain such legends, notices and indicia of registration and trademark or copyright usage as RoomPro may from time to time prescribe.

(*See* Exhibit B) (emphasis added).

21.

Beginning August 2013 through June 2015, Mr. Olds hired three contractors to assist with development and writing of the source code and overall program for the RoomPro ALERT System. These contractors were Mohammed Lakkadshaw, Josh Perkins, and Gadgeon.

22.

In July 2018, Mohammed Lakkadshaw, Josh Perkins, and Gadgeon assigned their intellectual property rights relating to their contribution to development of the RoomPro ALERT System to RoomPro. Copies of the three assignments are attached as Exhibit C.

*RoomPro's Product Rebranding*

23.

RoomPro changed the name of its security product from "RoomPro ALERT System" to "Alertpoint System." To that end, for the benefit of and use by RoomPro, Mr. Olds registered the domain name, <alertpoint.com> on December 10, 2014. At that time, Mr. Olds also started developing a website to be hosted at <alertpoint.com>.

24.

Mr. Olds and RoomPro designed and started using the AlertPoint logo in April/ May 2015 in connection with the RoomPro ALERT System. RoomPro used the "TM" symbol next to its ALERTPOINT logo.

25.

Since at least as early as April and May 2015, Mr. Olds and RoomPro have continuously used the trademark ALERTPOINT, the AlertPoint logo and the <alertpoint.com> to market and sell the RoomPro ALERT System.

*Mr. Olds Relocates to Georgia*

26.

On June 1, 2015, Mr. Olds flew to Atlanta to demonstrate for Mr. Allen a working prototype of RoomPro's RoomPro ALERT System.[1]

27.

When Defendants demonstrated the RoomPro ALERT System for Mr. Allen, Mr. Allen told Mr. Olds it was such an impressive product that he (Mr. Allen) did

---

[1] Although by this time RoomPro rebranded its product from "RoomPro ALERT System" to "Alertpoint System," Defendants will continue to refer to the product as "RoomPro ALERT System." Defendants are doing this to try to avoid confusion, since, in the Complaint, Plaintiff refers to its knock-off, copycat system as "Alertpoint System."

not want to be a reseller, but rather wanted a financial and ownership stake in the product

28.

Mr. Olds and Mr. Allen then began discussing having a closer business relationship, including possibly setting up a new company to further develop, market and sell the RoomPro ALERT System.

29.

As of October 1, 2015, four months after Mr. Olds and RoomPro developed a working prototype of the RoomPro ALERT System, Mr. Allen had no involvement in the RoomPro ALERT System. And, as shown in an email attached as Exhibit D, the parties were just beginning discussing their potential partnership – which never came to fruition.

30.

On December 30, 2015, Mr. Olds relocated from Wisconsin to the State of Georgia to continue development of the RoomPro Alert System.

31.

Despite their promises to consummate and formalize an arrangement in which Mr. Olds and/or RoomPro would have an equity stake in this venture, Mr. Allen, Plaintiff and EDCO intentionally avoided doing that. They avoided it for the purpose

of excluding RoomPro and/or Mr. Olds from the financial and other benefits of the venture.

32.

Mr. Olds also had concerns about Mr. Allen's management of finances. Mr. Olds learned of what appeared to him to be unethical behavior by Plaintiff, EDCO, and Mr. Allen. The suspicious activities related to EDCO and Mr. Allen's dealings with the Cobb County School District, who has had in the past and continues to have multimillion dollar fulfillment contracts with EDCO. EDCO and Mr. Allen also engaged in suspicious activities relating to a factoring company used by EDCO.

*Promissory Note*

33.

By December 2015, Defendants had invested more than $600,000.00 in development of RoomPro ALERT System. Around that time, Mr. Olds told Mr. Allen that RoomPro would have difficulties funding further development of the RoomPro ALERT System.

34.

January 2016, EDCO began lending RoomPro money so RoomPro could afford all of the expenses relating to further development of its products, including the RoomPro ALERT System.

35.

On July 26, 2016, EDCO, RoomPro, and Mr. Olds executed a Promissory Note memorializing the loan from EDCO to RoomPro. *See* Promissory Note attached as Exhibit E.

36.

The RoomPro ALERT System intellectual property was collateral for the loan, which indicates that RoomPro (not EDCO, Mr. Allen, or Plaintiff) still owned the RoomPro ALERT System intellectual property at the time of the loan.

37.

In 2016, RoomPro had a working system for the RoomPro ALERT System, a "crisis management system," which was shown to potential customers. Demonstrations of the technology were also exhibited at industry trade shows.

38.

By the time of its development into a working system, RoomPro and Mr. Olds had invested over $600,000.00 in developing the RoomPro ALERT System, and EDCO had lent RoomPro $116,976.13, via a Promissory Note, which was fully repaid by RoomPro. *See* Exhibit E.

39.

The Promissory Note was paid in full on August 1, 2018; the total amount repaid by Defendants under the Promissory Note was approximately $128,000.00.

40.

AlertPoint, LLC was formed by Mr. Allen on December 1, 2016. Upon information and belief, after AlertPoint, LLC was organized, it assumed all of the legal obligations of EDCO as well as all of EDCO's rights to any assets, patents, and copyrights.

41.

Upon information and belief, when EDCO entered the Assignment with AlertPoint, EDCO represented that it was the owner of assets, patents, and copyrights associated with the RoomPro ALERT System.

42.

Upon information and belief, Mr. Allen and AlertPoint, LLC then began using the mark AlertPoint to sell the RoomPro ALERT System to schools, and EDCO and AlertPoint, LLC, both owned by Mr. Allen, began functioning interchangeably and/or as alter egos in the offering and reselling of the RoomPro ALERT System.

43.

Around November 29, 2017, Mr. Olds and Mr. Allen discussed filing a provisional patent for the RoomPro ALERT System.

44.

Mr. Olds, as the true inventor of RoomPro ALERT System, worked with patent attorney Yuri Eliezer, Esq. to create a draft of the provisional patent.

45.

At her insistence, Mr. Olds provided the draft provisional patent to Christina Brown, Esq., who was the CFO and General Counsel for EDCO, for review.

46.

However, without Mr. Olds' knowledge or permission, Plaintiff or its representatives took the provisional patent, removed Mr. Old's name as inventor, and provided it to Holland & Knight to file with the United States Patent and Trademark Office.

47.

Despite Plaintiff's misappropriation and filing of the provisional patent and Plaintiff's claimed ownership of the so-called "Alertpoint System" (which is actually a RoomPro product (i.e. the RoomPro ALERT System)), Ms. Brown, Plaintiff's attorney and CFO, admitted in an email dated December 1, 2016, that Plaintiff could not hold AlertPoint out as the owner of the intellectual property because the intellectual property would need to be assigned from Mr. Olds. *See* email attached as Exhibit F.

48.

Indeed, on that same day, December 1, 2016, Ms. Brown emailed to Mr. Olds and Mr. Allen a number of documents for Alertpoint, including an unsigned Intellectual Property Assignment Agreement which would transfer the intellectual

property rights from Mr. Olds and RoomPro to the new joint venture in exchange for Mr. Olds receiving 50% of the new venture. However, this transfer was never agreed upon and did not occur. *See* email attached as Exhibit G.

49.

As stated above, neither Mr. Olds nor RoomPro ever had a meeting of the minds or came to an agreement with Mr. Allen or any of Allen's entities with respect to any type of partnership, joint venture, or new entity.

50.

Plaintiff and Mr. Allen have realized more than $1.5 million in revenue as a result of its selling and/or licensing of the RoomPro ALERT System. However, none of that revenue has been paid to RoomPro despite its ownership of all intellectual property related to the RoomPro ALERT System.

51.

Plaintiff and Mr. Allen have also obtained significant sums through their misappropriation of the trademark "AlertPoint," which was created and owned by Mr. Olds and RoomPro, and which was used by Mr. Olds and RoomPro a year and a half prior to Plaintiff and Mr. Allen's filing of a false trademark application for the mark. Mr. David and Plaintiff's misappropriation of the mark "AlertPoint," which is Mr. Olds and RoomPro's trademark, has made the name, domain name, and brand established by Mr. Olds and RoomPro worthless to RoomPro.

52.

In 2018, RoomPro sold some of the intellectual property that makes up the RoomPro ALERT System and RoomPro products to non-party, 34ED, LLC.

53.

During negotiations and while 34ED, LLC conducted its due diligence for the sale of the intellectual property that makes up the RoomPro ALERT System, 34ED, LLC became aware of Mr. Allen's litigious past and Plaintiff and Mr. Allen's false claims of ownership related to the RoomPro ALERT System.

54.

As a result of this discovery, 34ED, LLC lowered their offer significantly.

55.

Additionally, 34ED, LLC sent Mr. Allen and Plaintiff a letter demanding it pay a licensing fee to 34ED, LLC for use of the RoomPro ALERT System. However, Mr. Allen and Plaintiff refused to pay the licensing fee.

56.

Had Mr. Allen and Plaintiff paid a licensing fee to use Mr. Olds and RoomPro's technology as 34ED, LLC demanded of them, and as Mr. Allen and Plaintiff are legally obligated to do, RoomPro would have made up to $500,000 from the licensing fee.

57.

In further contravention of Mr. Olds, RoomPro, and 34ED, LLC's rights, on August 16, 2018, Plaintiff and Mr. Allen sent a letter to 34ED, LLC continuing to make false claims of ownership of the RoomPro ALERT System. (*See* letter attached as Exhibit H).

58.

In the April 16, 2018 letter, AlertPoint, LLC falsely indicates that AlertPoint owns the copyrights to the software supporting the RoomPro ALERT System because it was created on a work-for-hire basis and paid for by AlertPoint and misleadingly accuses Mr. Olds and RoomPro of misappropriation of the RoomPro ALERT System and related trade secrets. AlertPoint, LLC also falsely indicated that it was AlertPoint and not Mr. Olds who invested in the development of the RoomPro ALERT System.

59.

Due to Plaintiff and Mr. Allen's actions, as detailed above, the purchase price 34ED, LLC paid for those assets was significantly less than what 34ED, LLC would have paid but for the false claims of ownership by Plaintiff and Mr. Allen.

60.

Plaintiff and Mr. Allen used and are still using RoomPro's and its successor's intellectual property without any license, compensation, or permission.

61.

Additionally, Plaintiff and Mr. Allen revised RoomPro's ALERT System and are continuing to use that revised system, which is an unauthorized derivative work of RoomPro's system.

Count I – Declaratory Judgment

62.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

63.

Declaratory Relief is sought under 28 U.S.C. § 2201, et seq. (Declaratory Judgment Act).

64.

There is a real and actual controversy between Mr. Olds and RoomPro, on the one hand, and Plaintiff and Mr. Allen, on the other hand, regarding ownership of the hardware, designs, source code, software, programmers' notes, technical descriptions, specifications, and all other intellectual property associated with the RoomPro ALERT System ("RoomPro ALERT IP") since both Mr. Olds and RoomPro, on the one hand, and Plaintiff and Mr. Allen, on the other hand, claim sole ownership of it.

65.

Plaintiff and Mr. Allen are using a system that is fully dependent on its unauthorized use of the RoomPro ALERT IP without providing any compensation to RoomPro.

66.

Furthermore, RoomPro sold some of the intellectual property that makes up the RoomPro ALERT IP to non-party 34ED, LLC who has obtained a copyright registration in the system (Reg. No. TXu002101569).

67.

During negotiations and while 34ED, LLC conducted its due diligence for the sale of the intellectual property that makes up the RoomPro ALERT IP, 34ED, LLC became aware of Mr. Allen's litigious past and Plaintiff and Mr. Allen's false claims of ownership related to the RoomPro ALERT IP.

68.

As a result of this discovery, 34ED, LLC lowered their offer significantly.

69.

In August 2018, 34ED, LLC received a letter from Plaintiff and Mr. Allen's asserting false claims of ownership over the RoomPro ALERT IP.

70.

Due to Plaintiff and Mr. Allen's actions, as described above, the purchase price 34ED, LLC paid for those assets was significantly less than what 34ED, LLC would have paid but for the false claims of ownership by Plaintiff.

71.

Thus, the controversy between RoomPro and Plaintiff is real and substantial and demands specific relief through a decree of a conclusive character.

72.

RoomPro is entitled to declaratory judgment that it is the sole owner of the RoomPro ALERT IP.

Count II – Breach of Contract
(Against EDCO)

73.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

74.

On or about March 5, 2013, EDCO (which transferred all the misappropriated intellectual property from EDCO to AlertPoint, LLC and which is owned by Mr. Allen) and RoomPro entered a RoomPro Brand Reseller Agreement (the "March 2013 Agreement").

75.

The March 2013 Agreement contained a provision related to RoomPro's trademarks and proprietary information.

76.

At the time of the March 2013 Agreement, RoomPro's "Products," as defined in the March 2013 Agreement, included the RoomPro ALERT System.

77.

According to Paragraph 12 of the March 2013 Agreement, EDCO/Plaintiff agreed that "all Products and all operating instructions, user manuals and other documentation relating thereto (the "Documentation") are proprietary property of RoomPro."

78.

According to Paragraph 12 of the March 2013 Agreement, EDCO/Plaintiff also agreed that "all patent, copyright, trade secret, trademark and other intellectual property rights" in the RoomPro Products "remain the exclusive property of RoomPro."

79.

According to Paragraph 12 of the March 2013 Agreement, EDCO/Plaintiff further agreed that EDCO "shall not acquire any rights or interest in any

Product…and that it will not dispute or take any action inconsistent with any of RoomPro's rights in the Products…"

80.

In exchange for EDCO/Plaintiff's agreement to the terms of the March 2013 Agreement, RoomPro granted EDCO/Plaintiff the right to market and sell RoomPro's products.

81.

EDCO/Plaintiff violated the terms of the March 2013 Agreement by misappropriating the RoomPro ALERT System and filing a provisional patent for the RoomPro ALERT System (created by an attorney hired by RoomPro and through the assistance of Mr. Olds and RoomPro), without RoomPro's knowledge, consent, or approval, to the exclusion of RoomPro.

82.

EDCO/Plaintiff have also violated the terms of the March 2013 Agreement by making a claim of ownership to the RoomPro ALERT System via the provisional patent filed with the United States Patent and Trademark Office and the August 16, 2018 letter from Plaintiff to non-party 34ED, LLC.

83.

EDCO/Plaintiff have further violated the terms of the March 2013 Agreement by disputing and bringing this action inconsistent with RoomPro's rights in the Products (i.e. the RoomPro ALERT System).

84.

As a result of EDCO/Plaintiff's actions, they have breached the March 2013 Agreement.

85.

Plaintiff's breach has caused, is causing, and threatens to cause Defendants to suffer substantial damages in an amount to be determined at trial.

Count III – Trademark Infringement Under
Georgia Common Law and Under O.C.G.A. § 23-2-55
(Against All Counterclaim Defendants)

86.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

87.

Mr. Olds and RoomPro recoined the RoomPro ALERT System "AlertPoint." Mr. Olds and RoomPro purchased AlertPoint.com on December 10, 2014. Mr. Olds started creating a website using that domain immediately.

88.

Mr. Olds and RoomPro designed and started using the AlertPoint logo including ™ in April and May of 2015 in connection with the RoomPro ALERT System.

89.

Since at least as early as April and May 2015, Mr. Olds and RoomPro have continuously used the trademark "AlertPoint," the AlertPoint logo including ™, and the domain name AlertPoint.com to market and sell their surveillance and emergency alert notification system for schools to the public.

90.

Upon information and belief, on or around the formation of AlertPoint, LLC on December 1, 2016, EDCO transferred all of its intellectual property to AlertPoint, LLC, Mr. Allen and AlertPoint, LLC began using the mark AlertPoint to sell the RoomPro ALERT System to schools, and the two companies, both owned by Mr. Allen, began functioning interchangeably in the offering and reselling of the RoomPro ALERT System.

91.

Mr. Allen and Plaintiff's "AlertPoint" mark is identical to and confusingly similar to Mr. Olds and RoomPro's "AlertPoint" mark, such that consumers are likely to confuse the two.

92.

Moreover, Mr. Olds and RoomPro are the senior user over Mr. Allen and Plaintiff.

93.

Mr. Allen and Plaintiff's actions violate Mr. Olds and RoomPro's common law rights in Georgia.

Count IV – Infringement of Non-Registered Trademark
Under Lanham Act (15 U.S.C. Section 1125)
(Against All Counterclaim Defendants)

94.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

95.

RoomPro changed the name of its security product from "RoomPro ALERT System" to "Alertpoint System." To that end, for the benefit of and use by RoomPro, Mr. Olds registered the domain name, <alertpoint.com> on December 10, 2014. At that time, Mr. Olds also started developing a website to be hosted at <alertpoint.com>.

96.

Mr. Olds and RoomPro designed and started using the AlertPoint logo in April/ May 2015 in connection with the RoomPro ALERT System. RoomPro used the "TM" symbol next to its ALERTPOINT logo.

97.

Since at least as early as April and May 2015, Mr. Olds and RoomPro have continuously used the trademark ALERTPOINT, the AlertPoint logo, and the <alertpoint.com> to market and sell the RoomPro ALERT System.

98.

Therefore, since at least as early as April and May 2015, Defendants had common law trademark rights in ALERTPOINT.

99.

Mr. Allen, EDCO, and/or Plaintiff's use of the identical mark, ALERTPOINT, did and was likely to cause confusion with Defendants' ALERTPOINT.

100.

Therefore, Mr. Allen, EDCO, and/or Plaintiff's are liable to Defendants for infringement of its non-registered trademark.

101.

Mr. Allen, EDCO, and/or Plaintiff's use of ALERTPOINT caused trademark infringement and unfair competition with Defendants' use of ALERTPOINT, in violation of 15 U.S.C. Section 1125(a)(1)(A).

102.

Mr. Allen, EDCO, and/or Plaintiff's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with ALERTPOINT to Defendants' irreparable injury.

V– Breach of Oral Contract
(Against All Counterclaim Defendants)

103.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

104.

Mr. Olds, on one hand, and Mr. Allen and Plaintiff, on the other, entered into an oral contract wherein Mr. Olds would permit expenses incurred on behalf of AlertPoint, LLC to be placed on Mr. Olds' credit card and Mr. Allen and Plaintiff would reimburse Mr. Olds for those expenses in a timely manner.

105.

Almost all product and services purchased by AlertPoint, LLC in 2018 were placed on Mr. Olds' credit card or utilizing Mr. Olds' funds.

106.

Mr. Olds managed a cash flow spreadsheet that was regularly shared with Mr. Allen, Ms. Brown, and Plaintiff's bookkeeper showing incoming funds and AlertPoint, LLC expenses that needed to be paid.

107.

However, Mr. Allen and Plaintiff breached the contract by failing to repay Mr. Olds' for numerous expenses incurred solely on behalf of AlertPoint, LLC, a company owned by Mr. Allen, as agreed to in the parties' oral agreement.

108.

As a result of Mr. Allen and Plaintiffs' breach, they owe Mr. Olds over $100,000.00 for expenses Mr. Olds personally incurred to keep AlertPoint, LLC (a company owned by Mr. Allen) afloat.

VI – Attorney's Fees (O.C.G.A. § 9-15-14)
(Against All Counterclaim Defendants)

109.

Defendants incorporate by reference the allegations in each of the preceding paragraphs of this Counterclaim.

110.

Plaintiff is well aware that Defendants are the true owners of the RoomPro ALERT System and of EDCO's obligations under the March 5, 2013 RoomPro Brand Reseller Agreement.

111.

Plaintiff lacks substantial justification for this lawsuit and has interposed this lawsuit merely for harassment of Defendants.

112.

Therefore, Defendants are entitled to an award of the attorney's fees spent in defending this frivolous action pursuant to O.C.G.A. § 9-15-14.

Jury Demand

113.

Defendants demand a trial by jury for all issues so triable.

Prayer of Relief

114.

WHEREFORE, Defendants respectfully requests the following relief:

(1) Declaratory Judgment that RoomPro is the sole owner of the hardware, designs, source code, software, programmers' notes, technical descriptions, specifications, and all other intellectual property associated with the RoomPro ALERT System;

(2) Preliminarily and permanently enjoin and restrain Plaintiff, Mr. Allen, and AlertPoint, LLC from:

(i) using Defendants' ALERTPOINT mark or confusingly similar deviations of Defendants' mark in the United States;

(ii) doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or the trade or to lead persons into the erroneous belief that Plaintiff, Mr. Allen, or EDCO's services or products are associated with Defendants;

(iii) registering or continuing to use any domain name which incorporates, in whole or in part, any word or Mark identical to or confusingly similar to the Defendants' ALERTPOINT Mark, including alertpoint.com;

(iv) maintaining any use of or reference to the ALERTPOINT mark on any website over which Plaintiff, Mr. Allen, or EDCO have control including but not limited to: alertpoint.com; and

(v) compete unfairly with Defendants in any manner not otherwise described in this Prayer for Relief;

(3) Direct Plaintiff, Mr. Allen, and EDCO to file with the Court and serve upon undersigned counsel for Defendants, within five (5) days of the entry of the TRO or preliminary injunction, or both, a report in writing under oath setting forth in detail the form and manner in which it has complied with said injunctions, pursuant to 15 U.S.C. § 1116(a);

(4) Direct Plaintiff, Mr. Allen, and EDCO to destroy all materials in their possession, custody, or control, which use or otherwise contain the ALERTPOINT Mark, under 15 U.S.C. § 1118;

(5) Order forfeiture, cancelation, or transfer to Defendants Plaintiff's registration of the domain name alertpoint.com;

(6) Award Defendants:

(i) Damages resulting from Plaintiff, Mr. Allen, and EDCO's breach of RoomPro Brand Reseller Agreement, trademark infringement under Georgia common law, trademark infringement non-registered trademark under the Lanham Act, and breach of oral agreement in amount to be proven at trial;

(ii) attorney's fees;

(iii) pre-judgment interest;

(iv) post-judgment interest at the legal rate;

(v) all costs of court; and

(vi) such other and further relief as this Court deems just and proper.

Respectfully submitted this 15th day of October, 2018.

**LILENFELD PC**

*/s/ David M. Lilenfeld*
David M. Lilenfeld
Georgia Bar No. 452399
Kaitlyn A. Haase
Georgia Bar No. 431935
3379 Peachtree Road, NE
Suite 980
(404) 201-2520 – telephone
David@Lilenfeld.com
Kaitlyn@Lilenfeld.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALERTPOINT, LLC<br><br>Plaintiffs,<br><br>v.<br><br>DEAN OLDS and ROOMPRO TECHNOLOGIES, INC.,<br><br>Defendants.<br>v.<br><br>DAVID ALLEN and EDCO-EDUCATIONAL CONSULTANTS, INC.,<br><br>Proposed Counterclaim Defendants. | ) | Case No.: 1:18-CV-03879-ELR |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing, on the date stated below, was filed with the Clerk of Court using the CM/ECF system, which automatically and contemporaneously sends electronic notification and a service copy of such filing to the following counsel of record:

A. Andre Hendrick, Esq.,
*Andre.hendrick@hklaw.com*

Jeffery B. Arnold, Esq.,
*Jeff.arnold@hklaw.com*

October 15, 2018

*/s/ David M. Lilenfeld*
David M. Lilenfeld